IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA,           §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §   CIVIL ACTION NO. H-08-3388
                                    §
RALPH E. GUSTAFSON, DEBORAH W.      §
GUSTAFSON, MARTIN J. SCHOTT,        §
CINDY SCHOTT, and INDYMAC           §
BANK F.S.B., and HSBC               §
MORTGAGE SERVICES,                  §
                                    §
        Defendants.                 §

## MEMORANDUM OPINION AND ORDER

Plaintiff, United States of American, brings this action against the defendants, Ralph E. Gustafson, Deborah W. Gustafson, Martin J. Schott, Cindy Schott, Indymac Bank F.S.B., and HSBC Mortgage Services for liability judgment and tax lien foreclosure pursuant to 26 U.S.C. §§ 6321, 6322, and 7403.[1] Pending before the court are OneWest Bank, FSB's Motion for Summary Judgment (Docket Entry No. 44), and United States' Motion for Summary Judgment (Docket Entry No. 45). For the reasons explained below OneWest's motion will be denied and the United States' motion will be granted in part and denied in part.

---

[1]United States of America's Amended Complaint (Amended Complaint), Docket Entry No. 25. By Order entered on August 4, 2009, (Docket Entry No. 29), OneWest has been substituted as the real party in interest instead of IndyMac Bank F.S.B., and by Order entered on January 19, 2010, (Docket Entry No. 41), Martin J. Schott and Cindy Schott have been dismissed as defendants.

## I. **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S. Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable

-2-

inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## II. <u>Undisputed Facts</u>

On or about April 14, 1976, Ralph E. Gustafson and Deborah W. Gustafson (the Gustafsons) purchased real property in Simonton, Texas.  The Simonton property (the Property) is more particularly described as

> Tract Five (5) in Block Eleven (11) of Brazos Valley, Section Two, a subdivision in Fort Bend County, Texas, according to the plat thereof recorded in Vol. 385, page 521, et seq. of the Deed Records of Fort Bend County, Texas.[2]

In 1998 the United States began assessing and noticing the Gustafsons for unpaid federal income taxes and in 2001 the United States began assessing Ralph Gustafson for unpaid federal employment taxes.[3]

---

[2]Deed of Trust, Exhibit 4 attached to United States' Brief in Support of Its Motion for Summary Judgment (Plaintiff's Brief), Docket Entry No. 45.

[3]See Exhibit 2 attached to United States of America's Amended Complaint, Docket Entry No. 25 (copies of notices of federal tax liens).

On or about February 1, 2005, following notice of default to the Gustafsons,' Washington Mutual Bank, FA (Washington Mutual), purchased the Property at a non-judicial foreclosure sale for $81,037.23.[4] Washington Mutual's purchase of the Property at the non-judicial foreclosure sale extinguished the federal tax liens that the United States had previously asserted against the property.[5]

On April 25, 2005, Washington Mutual issued a Deed Without Warranty transferring the Property to Ralph E. Gustafson and Deborah W. Gustafson in exchange for consideration of $82,477.89.[6] The Deed Without Warranty was filed and recorded on July 13, 2005.[7] The consideration for the deed was paid by the Schotts directly to Washington Mutual.[8]

---

[4]Trustee's Deed, Exhibit 5 attached to Plaintiff's Brief, Docket Entry No. 45.

[5]Plaintiff's Brief, Docket Entry No. 45, p. 8 ("Ralph and Deborah Gustafson had income tax liabilities for the 1997, 1998, 1999 2000, and 2002 income tax years and Ralph Gustafson owed employment tax liabilities for the quarterly periods ending March 31, 2001 through March 31, 2002 when Washington Mutual foreclosed on the Simonton Property. The liens were extinguished by the Washington Mutual foreclosure sale.").

[6]Deed Without Warranty, Exhibit 6 attached to Plaintiff's Brief, Docket Entry No. 45.

[7]Id.

[8]Oral Deposition of Ralph E. Gustafson, Exhibit A attached to Defendant OneWest Bank, FSB's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 47, pp. 28-29.

-4-

On July 8, 2005, Martin J. Schott and Cindy Schott executed a Deed of Trust pursuant to which they granted IndyMac Bank, F.S.B. a security interest in the Property in exchange for a loan of $136,000.00.[9]   The security interest included a power of sale, required the Schotts to use the Property as their principal place of residence, identified the loan as "purchase money," and required the Schotts to agree (1) that they would not receive any cash from the loan, and (2) that any advance not needed to purchase, complete construction, or renew a prior lien on the Property would be used to reduce the balance evidenced by the note.[10]

On July 11, 2005, Ralph E. Gustafson and Deborah W. Gustafson executed a Warranty Deed with Vendor's Lien conveying the Property to Martin J. Schott and Cindy Schott,

> for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other valuable consideration paid to Grantor by MARTIN J. SCHOTT and wife CINDY SCHOTT ("Grantee"), the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantee of one promissory note of even date herewith in the principal sum of $34,000.00 2nd Lien Note payable to the order of IndyMac Bank, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK ("Payee") and secured by the vendor's first lien herein retained and a Deed of Trust

---

[9]Deed of Trust, Exhibit A-3 attached to Defendant Onewest Bank, FSB's Motion for Summary Judgment (Defendant's Motion), Docket Entry No. 44.  See also Exhibit 7-1 attached to Plaintiff's Brief, Docket Entry No. 45.

[10]Id. at Definitions ¶ R and ¶¶ 6, 27, 28.

of even date herewith to LORI GRAY, Trustee, for the benefit of Payee.[11]

The warranty deed for the sale was filed and recorded in Fort Bend County, Texas, on August 3, 2005.[12]

On October 11, 2005, the Gustafsons filed a Chapter 7 Voluntary Petition in Bankruptcy.[13]

On April 24, 2006, the Gustafsons were granted a bankruptcy discharge of joint income tax liabilities for the 1997, 1998, 1999, and 2000 tax years, and on February 22, 2006, an Agreed Judgment entered in an adversary proceeding provided that "[t]he tax liens relating to debtors' income taxes pass through the bankruptcy and remain attached to the property or interests in property owned by debtors at the time of the filing of debtors' petition in bankruptcy."[14]

On March 11, 2009, the Federal Deposit Insurance Corporation (FDIC) announced that IndyMac Bank FSB had been sold to OneWest Bank, FSB, which agreed to purchase substantially all of the assets of IndyMac, including the loan asset at issue in this case.[15]

---

[11]Warranty Deed With Vendor's Lien, Exhibits A-1 and A-2 attached to Defendant's Motion, Docket Entry No. 44. See also Exhibit 7 attached to Plaintiff's Brief, Docket Entry No. 45.

[12]Id.

[13]See Docket Entry No. 1 in Bankruptcy Case No. 05-48361.

[14]See Discharge of Joint Debtors and Agreed Judgment, included in Exhibit 1 attached to Plaintiff's Brief, Docket Entry No. 25, and Exhibit 8 attached to Plaintiff's Brief, Docket Entry No. 45.

[15]See Affidavit of Chris Moore attached to Unopposed Motion for
(continued...)

### III. **Analysis**

The United States asserts two claims in this action. The first claim seeks judgment for outstanding tax assessments holding Ralph and Deborah Gustafson liable for joint federal income taxes, penalties, and interest for the 2002, 2003, 2006, and 2007 tax years in the amount of $14,387.83, as well as for additional interest and statutory additions that continue to accrue until the taxes are paid, and holding Ralph Gustafson liable for federal employment taxes, penalties, and interest for the tax periods ending December 31, 2000, March 31, 2001, June 30, 2001, December 31, 2001, and March 30, 2002, in the amount of $96,407.01, as well as for additional interest and statutory additions that continue to accrue until the taxes are paid. The second claim seeks a judgment allowing the United States to enforce its tax liens against the Gustafsons by foreclosing upon and selling the Property. In support of this claim, the United States alleges that

> [p]ursuant to 26 U.S.C. §§ 6321 and 6322, liens arose on the dates of assessment outlined in paragraphs 10, 11, and 12 in favor of the United States against all property and rights to property belonging to Ralph E. Gustafson and Deborah W. Gustafson on the assessment date as acquired thereafter. The United States has perfected these lien interests by filing notice of its tax liens in the Fort Bend [County], Texas records. These liens, with the exception of the personal liabilities discharged by

---

[15](...continued)
Substitution of Real Party in Interest, Docket Entry No. 28, ¶ 5 (stating that OneWest Bank, FSB, agreed to purchase substantially all of the assets of IndyMac Federal, including the Loan Asset at issue in this case).

the bankruptcy, secure the liabilities to be reduced to judgment in this case.

The United States of America's tax liens, including the *in rem* liens for liabilities personally discharged by the bankruptcy, attach to the property listed in paragraph 15 of the complaint and have priority over all other defendants.[16]

Defendant, OneWest, seeks summary judgment and "an order declaring OneWest's purchase money lien superior to all federal tax liens the Government asserts against the Property."[17]

The United States seeks summary judgment on the bases that "Ralph E. Gustafson is indebted to the United States in the amount of $79,456.54 and Deborah Gustafson is indebted to the United States in the amount of $15,560.44, plus statutory additions accruing from June 28, 2010,"[18] and that "the United States is entitled, as a matter of law, to foreclose its federal tax lien against the real property at issue to satisfy the outstanding tax debts."[19] OneWest has filed a response to the United States' motion for summary judgment reasserting its contention that it holds a purchase money lien against the Property that is superior to any

---

[16]United States of America's Amended Complaint, Docket Entry No. 25, p. 5 ¶¶ 22-23.

[17]Defendant, OneWest Bank, FSB's Motion for Summary Judgment, Docket Entry No. 44, p. 3.

[18]United States' Motion for Summary Judgment, Docket Entry No. 45, first unnumbered page.

[19]Id.

prior tax liens.  The Gustafsons have not responded to the United States' motion for summary judgment.

## A.    Liability for Outstanding Tax Assessments

Asserting that the Gustafsons are liable for outstanding tax assessments, the United States seeks summary judgment that Ralph E. Gustafson is indebted to the United States in the amount of $63,896.10 and that Ralph E. Gustafson and Deborah Gustafson are indebted to the United States in the amount of $15,560.44, plus statutory additions accruing from June 28, 2010.[20]  The Gustafsons have not responded to the United States' motion for summary judgment.  For the reasons explained below the court concludes that the United States is entitled to judgment as a matter of law that the Gustafsons are liable for the outstanding tax assessments identified in the United States' motion for summary judgment.

### 1.    Gustafasons' Failure to Respond

Six weeks have passed since the United States filed its motion for summary judgment on June 28, 2010, (Docket Entry No. 45), three weeks have passed since the Gustafsons' response to the pending motion was due on July 19, 2010, and more than four months have

---

[20]United States' Brief, Docket Entry No. 45, pp. 2-3 ¶¶ 2-3.

passed since the period for discovery expired on March 31, 2010,[21]
yet the Gustafsons have not responded to the United States' motion.

Local Rule 7.3 provides that: "Opposed motions will be
submitted to the judge twenty days from filing without notice from
the clerk and without appearance by counsel."   S.D. Tex. R. 7.3
(2000).   Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of
> no opposition.   Responses to motions
>
> A.   Must be filed by the submission day;
> B.   Must be written;
> C.   Must include or be accompanied by authority; and
> D.   Must be accompanied by a separate form order
>      denying the relief sought.

S.D. Tex. R. 7.4 (2000).   In accordance with Local Rule 7.4, the
court takes the Gustafsons' failure to respond to the United
States' motion for summary judgment as a representation of no
opposition to the United States' summary judgment evidence.

Although a district court may not grant summary judgment by
default simply because there is no opposition to the motion, the
court may accept as undisputed the movant's version of the facts
and grant a motion for summary judgment when the movant has made a
prima facie showing of entitlement to summary judgment.   See John
v. State of Louisiana (Board of Trustees for the State Colleges and
Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's
summary judgment evidence establishes its right to judgment as a

---

[21]See Docket Control Order, Docket Entry No. 9, ¶ 6.

matter of law, the district court is entitled to grant summary judgment absent unusual circumstances); and <u>Eversley v. Mbank Dallas</u>, 843 F.2d 172, 174 (5th Cir. 1988)(when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law).

2.   <u>Applicable Law</u>

An assessment of tax by the Internal Revenue Service (IRS) "is presumptively correct therefore, the [taxpayer] must shoulder the burden of proving that the tax assessment was improper." <u>Affiliated Foods, Inc. v. Commissioner</u>, 154 F.3d 527, 530 (5th Cir. 1998) (citing <u>Welch v. Helvering</u>, 54 S. Ct. 8, 9 (1933)). A lien for non-payment of federal taxes arises upon assessment of the tax. In order to be valid as against some classes of lienholders, notice of the lien must be filed as designated by the laws of the state in which the property is located.  26 U.S.C. § 6323(f).  Federal tax liens extend to after-acquired property.  <u>See</u> <u>Glass City Bank of Jeanette, Pennsylvania v. United States</u>, 66 S. Ct. 108, 110 (1945) ("Congress also provided that the lien should 'continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.' . . . [Thus,] a continuing lien covers property or rights to property in the delinquent's hands at any time prior to expiration.").

-11-

3.   <u>United States' Prima Facie Showing</u>

The exhibits attached to the United States' motion for summary judgment make a prima facie showing that

(1)   Ralph E. Gustafson and Deborah Gustafson owe the United States the following amounts of unpaid federal income taxes, penalties, and interest:

| Type of Tax | Tax Period | Assessment Date | Recording Date | Amount Due 06/28/2010 |
|---|---|---|---|---|
| 1040 | 2002 | 09/15/2003 Exhibit 2 | 04/27/2005 Exhibit 1 | 10,269.12 Exhibit 2-1 |
| 1040 | 2003 | 11/15/2004 Exhibit 2 | Not Evidenced | 375.63 Exhibit 2-1 |
| 1040 | 2006 | 11/19/2007 Exhibit 2 | Not Evidenced | 3,092.05 Exhibit 2-1 |
| 1040 | 2007 | 06/22/2008 Exhibit 2 | Not Evidenced | 1,823.64 Exhibit 2-1 |
| TOTAL | | | | **$15,560.44** |

(2)   Ralph E. Gustafson owes the United States the following amounts of unpaid, non-discharged federal employment taxes and interest:

| Type of Tax | Tax Period | Assessment Date | Recording Date | Amount Due 06/28/2010 |
|---|---|---|---|---|
| 941 | 03/31/2001 | 06/11/2001 Exhibit 3 | 04/22/2002 Exhibit 1 | 22,362.28 Exhibit 3-2 |
| 941 | 06/30/2001 | 09/17/2001 Exhibit 3 | 04/22/2002 Exhibit 1 | 16,995.77 Exhibit 3-2 |
| 941 | 12/31/2001 | 04/08/2002 Exhibit 3 | 04/22/2002 Exhibit 1 | 16,331.58 Exhibit 3-2 |
| 941 | 03/30/2002 | 06/17/2002 | 12/02/2002 Exhibit 1 | 8,206.48 Exhibit 3-2 |
| TOTAL | | | | **$63,896.10** |

-12-

(3)   Notice and demand for the unpaid taxes listed above have
been provided to Ralph E. Gustafson and Deborah Gustafson
and filed in the real property records of Fort Bend
County, Texas, for Ralph and Deborah Gustafson's
liability for the 2002 income tax assessment, and for
Ralph Gustafson's liability for the above-listed
employment tax assessments.

The United States has not presented any evidence showing that the
United States recorded liens securing the Gustafsons' liability for
the 2003, 2006, or 2007 income tax assessments.[22]

Because the Gustafsons have not submitted any evidence that
disputes the United States' evidence of the tax assessments that
the United States seeks to have reduced to judgment against them,
the court concludes that the United States is entitled to judgment
as a matter of law that Ralph E. Gustafson and Deborah Gustafson
are indebted to the United States for unpaid 2002, 2003, 2006, and
2007 income taxes in the amount of $15,560.44, plus statutory
additions accruing from June 28, 2010, and that Ralph E. Gustafson
is indebted to the United States for unpaid employment taxes for
the last three quarters of 2001 and the first quarter of 2002 in

_____

[22]See Plaintiff's Brief, Docket Entry No. 45, p. 3 ¶ 4 stating
only that the United States has recorded tax liens for the 2002
income tax liabilities.

the amount of $63,896.10, plus statutory additions accruing from June 28, 2010.

## B.   Ability to Foreclose and Sell the Simonton Property

The United States seeks summary judgment that it is "entitled, as a matter of law, to foreclose its federal tax lien against the real property at issue to satisfy the outstanding tax debts."[23] OneWest contends that it its entitled to judgment as a matter of law because Ralph Gustafson's testimony establishes that the Gustafsons held no interest in the Property to which a federal tax lien could attach,[24] and the Schotts held a purchase-money lien against the Property that is superior to any prior tax lien.[25]

### 1.   Applicable Law

An individual's failure to pay federal taxes results in a federal tax lien against "all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  The Supreme Court has held that § 6321's "statutory language 'all property rights and rights to property,' . . . is

---

[23]<u>Id.</u>

[24]Defendant, OneWest Bank, FSB's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 47, p. 3 ¶ 6.

[25]Defendant, OneWest Bank, FSB's Motion for Summary Judgment, Docket Entry No. 44; and Defendant OneWest Bank, FSB's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 47.

broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have," United States v. National Bank of Commerce, 105 S. Ct. 2919, 2924 (1985), including after-acquired property. Glass, 66 S. Ct. at 110. A federal tax lien, however, does not attach to property in which the taxpayer has no interest under state law. See Slodov v. United States, 98 S. Ct. 1778, 1790 (1978) ("the IRS is not given the power to levy on property in the hands of the taxpayer beyond the extent of the taxpayer's interest in the property").

The nature and extent of the taxpayer's property interest have traditionally been recognized as matters to be determined by state law. Aquilino v. United States, 80 S. Ct. 1277, 1280 (1960); United States v. Bess, 78 S. Ct. 1054, 1057 (1958), superseded on other grounds by 26 U.S.C. § 6332(b). Thus courts look to state law to determine what rights — if any — the taxpayer has in the property the United States seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" to which a federal lien can attach. Slodov, 98 S. Ct. at 1790 & n.19 ("We have held that the extent of the tax debtor's interest in the property is determined by state law, and that the lien cannot attach when the debtor has no interest."). See also Morgan v. Commissioner, 60 S. Ct. 424, 426 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so

created, shall be taxed."). In <u>Aquilino</u> the Supreme Court reaffirmed the holding in <u>Morgan</u>, 60 S. Ct. at 424, that federal law determines whether the taxpayer's interests are sufficient to constitute "property" or "rights to property" sufficient to be subjected to the Government's lien, and remanded for determination of whether the taxpayer held any beneficial interest in the property at issue as opposed to "bare legal title." 80 S. Ct. at 1280-81. In <u>Drye v. United States</u>, 120 S. Ct. 474 (1999), the Supreme Court noted that

> <u>Aquilino</u> supports the view that the Court has chosen to apply a federal test of classification, for the [taxpayer] concededly had legal title to the [property] and yet in remanding the Court indicated that this state-created incident of ownership was not a sufficient 'right to property' in the contract proceeds to allow the tax lien to attach. In this sense <u>Aquilino</u> follows <u>Bess</u> in requiring that the taxpayer must have a beneficial interest in any property subject to the lien.

<u>Id.</u> at 482 & n.6 (quoting Note, <u>Property Subject to the Federal Tax Lien</u>, 77 Harv. L.Rev. 1485, 1491 (1964)). The Supreme Court explained that "in determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' '[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" <u>Id.</u> (quoting <u>Morgan</u>, 60 S. Ct. at 427). Only after the court has determined that the taxpayers have property or the right to property to which a federal tax lien may attach, does the question of the priority of a federal tax lien over competing claims become an issue. <u>United</u>

-16-

States v. Durham Lumber Co., 80 S. Ct. 1282, 1284-85 (1960) (citing
Aquilino, 80 S. Ct. at 1285, and Bess, 78 S. Ct. at 1057).


     2.   Application of the Law to the Facts

     (a)  Gustafsons' Right to the Property Under Texas Law
Citing 26 U.S.C. § 6321, the United States contends that on
April 25, 2005, when the Property was repurchased from Washington
Mutual, the Gustafsons acquired the Property or rights to the
Property to which the federal tax liens reattached.  See Glass,
66 S. Ct. at 110) (recognizing that federal tax liens attach to
after-acquired property).   As evidence that the Gustafsons
acquired the Property and/or rights to the Property to which a
federal tax lien attached in April of 2005, the United States cites
the Deed Without Warranty executed by Washington Mutual on April
25, 2005, that identifies Washington Mutual as grantor, the
Gustafsons as grantees, the amount of consideration as $82,477.89,
the property conveyed as the Simonton Property at issue in this
action, and the date of filing in the official public records of
Fort Bend County, Texas, as July 13, 2005.[26]  Asserting that the
assessment for delinquent taxes automatically results in a lien on
the taxpayers' property, the United States contends that a federal

---

    [26]Deed Without Warranty, Exhibit 6 attached to Plaintiff's
Brief, Docket Entry No. 45.

tax lien attached to the Property when it was deeded from Washington Mutual to the Gustafsons. See 26 U.S.C. §§ 6231, 6322.

Citing the deposition testimony of Ralph Gustafson that the funds used to purchase the Property from Washington Mutual were provided by the Schotts, not the Gustafsons, OneWest argues that the Schotts held equitable title to the Property and the Gustafsons had no interest in the Property to which a federal tax lien could attach, or that the Schotts held an equitable purchase money lien against the Property that was superior to any federal tax liens.[27] OneWest explains that

> after the Washington Mutual foreclosure, Schott funded the purchase of the Property from the Bank and **the deed to the home was to be held by Gustafson in trust.** (Exhibit A, Deposition of Ralph Gustafson, p. 28, l 3-21). Schott sent the money directly to Washington Mutual to pay for title to the Property out of foreclosure. *Id.*, at p. 28-29. Schott purchased the home out of foreclosure, not Gustafson. *Id.*, at 38, l. 24 - p. 39, l. 1). Gustafson didn't have the money or credit to purchase the home from Washington Mutual. *Id.*, at p. 52, l. 1-11). **Because Schott advanced the purchase money to Gustafson, Schott had an equitable purchase money lien which was superior to the federal tax liens.** *See IRS v. Fagin*, 252 B.R. 118, 120 (W.D. Tex. 2000).
>
> The entire deal was predicated upon Schott purchasing the property for full consideration in exchange for Gustafson executing a contract for deed to purchase the property at a later date. (Exhibit "A", Deposition of Ralph Gustafson, p. 37-38). The fact that Schott was able to take advantage of the lower purchase price out of foreclosure by having Gustafson obtain the title does not negate the fact Schott was the true owner of the Property. OneWest then provided a purchase money

---

[27]Defendant, OneWest Bank, FSB's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 47, pp. 3-4.

mortgage to Schott.   These two purchase money mortgages
should be protected as the primary liens upon the grounds
stated in <u>Slodov</u> because the IRS has not been prejudiced
by those liens.   Simply put, the Property would not have
been in the Gustafson's estate without the purchase money
advanced by Schott and OneWest.[28]

Ralph Gustafson's testimony is sufficient to raise a genuine
issue of material fact regarding the nature of the right — if any
— that the Gustafsons acquired to the Property following its
repurchase from Washington Mutual.   In light of the evidence that
Washington Mutual deeded the Property to the Gustafsons in April of
2005, and that the Gustafsons deeded the Property to the Schotts
three months later in July of 2005, Ralph Gustafson's testimony is
not sufficient, however, to establish that OneWest is entitled to
judgment as a matter of law.


          (b)   Priority of Competing Liens

     Citing <u>IRS v. Fagin</u>, 252 B.R. 118, 120 (W.D. Tex. 2000),
OneWest contends that "[b]ecause Schott advanced the purchase money
to Gustafson, Schott had an equitable purchase money lien which was
superior to the federal tax liens."[29]  In <u>Fagin</u> the Bankruptcy Court
held that a deed of trust executed by the debtor in favor of his
parents was not a "transfer," within the meaning of Texas
fraudulent transfer statute, but merely a memorialization of an

---

[28]<u>Id.</u> at ¶¶ 6-7. (emphasis added)

[29]<u>Id.</u> at ¶ 6.

-19-

equitable mortgage that his parents had acquired some years earlier when they advanced money to the debtor to purchase property subject to the debtor's promise not only to repay them but also to grant them a lien against the property to secure the loan. The Bankruptcy Court concluded that the equitable mortgage held by the debtor's parents was superior to the United States' federal tax liens because the debtor used the proceeds of the mortgage to retire an earlier mortgage that predated the federal tax liens and that the parents' equitable mortgage was thus subrogated to the rights of the earlier mortgage that was senior to the federal tax liens.

Although OneWest contends that the Bankruptcy Court's opinion in <u>Fagin</u> supports its contention that "Schott had an equitable purchase money lien which was superior to the federal tax liens,"[30] OneWest has not explained how and/or why <u>Fagin</u> supports this contention. While the evidence in <u>Fagin</u> showed that the debtor promised both to repay the loan provided by his parents and to provide his parents a lien against the property that he used the loan proceeds to purchase, OneWest has not presented any evidence showing that similar agreements existed between the Gustafsons and the Schotts. Absent evidence that the Schotts provided funds to purchase the Property from Washington Mutual in exchange for or in reliance on the Gustafsons' promises to repay those funds and to

---

[30]<u>Id.</u> at ¶ 6.

grant the Schotts a lien against the Property to secure repayment, OneWest has failed to present any evidence from which a reasonable fact finder could conclude that the funds used to purchase the Property from Washington Mutual in April 2005 constituted an equitable mortgage or established an equitable lien against the Property.

Nor has OneWest presented any evidence from which a reasonable finder of fact could conclude that the funds IndyMac loaned the Schotts in July of 2005 constituted a purchase money loan. OneWest has presented excerpts from the deposition testimony of Ralph Gustafson that the Schotts provided the funds used to purchase the Property from Washington Mutual in April of 2005, and that although Washington Mutual deeded the Property to the Gustafsons, the Gustafsons held the deed in trust for the Schotts who were the true owners of the Property. If, as Ralph Gustafson testified, the Schotts owned the Property in April of 2005, then the loan that IndyMac made to the Schotts in July of 2005 could not have been a purchase-money loan because the loan proceeds would not have been used to purchase property that the Schotts did not already own.

3.   <u>Conclusions</u>

Neither party has provided the court enough evidence or briefing on Texas law to determine what — if any — right to the Property recognized by Texas law the Gustafsons and/or the Schotts

acquired and/or held in April of 2005 when the Property was purchased from Washington Mutual, in July of 2005 when IndyMac provided the Schotts a loan secured by the Property, or in October of 2005 when the Gustafsons filed their Chapter 7 Petition in Bankruptcy.  Absent evidence establishing the existence of a right to the Property recognized by Texas law that the Gustafsons and/or the Schotts acquired and/or held on these dates, the court is unable to determine whether the Gustafsons acquired a right to the Property to which a federal tax lien could attach.   Absent evidence that the Gustafsons acquired a right to the Property to which a federal tax lien could attach, the court is unable to determine if the Property is subject to competing liens or, if so, which of the competing liens is superior.  See Drye, 120 S. Ct. at 482 & n.6 ("courts should look first to state law to determine 'the nature of the legal interest' a taxpayer has in the property the Government seeks to reach under its tax lien").  Accordingly, the court concludes that genuine issues of material fact preclude the grant of summary judgment to either party.

## IV. Conclusions and Order

For the reasons explained above in § III.A, the court concludes that the United States is entitled to judgment as a

matter of law that Ralph E. Gustafson and Deborah Gustafson are indebted to the United States for unpaid 2002, 2003, 2006, and 2007 income taxes in the amount of $15,560.44 plus statutory additions accruing from June 28, 2010, and that Ralph E. Gustafson is indebted to the United States for unpaid employment taxes for the last three quarters of 2001 and the first quarter of 2002 in the amount of $63,896.10 plus statutory additions accruing from June 28, 2010.  For the reasons explained above in § III.B, the court concludes that genuine issues of material fact preclude the grant of summary judgment to either the United States or OneWest regarding the existence and/or priority of competing liens. Accordingly, Defendant One West Bank, FSB's Motion for Summary Judgment, Docket Entry No. 44, is **DENIED**, and the United States' Motion for Summary Judgment, Docket Entry No. 45, is **GRANTED IN PART** and **DENIED IN PART**.

The joint pretrial order shall be filed by Friday, September 3, 2010.  The joint pretrial order shall include proposed findings of fact and conclusions of law, and shall be accompanied by trial briefs that address, <u>inter alia</u>, what — if any — right to the Property recognized by Texas law the Gustafsons and/or the Schotts acquired and/or held in April of 2005 when the Property was purchased from Washington Mutual, in July of 2005 when IndyMac provided the Schotts a loan secured by the Property, and in October of 2005 when the Gustafsons filed their Chapter 7 Petition

in Bankruptcy, and what — if any — federal law supports the attachment of a federal tax lien to the Property.

Docket call will be held in Courtroom 9B on Friday, September 10, 2010 at 4:00 p.m.

**SIGNED** at Houston, Texas, this 10th day of August, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE